UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | CASE NO. 21-CR-00730 (CKK) |
| v. | : | |
| | : | |
| DANEAN KIMBERLY MACANDREW, | : | |
| | : | |
| | : | |
| Defendant. | : | |

GOVERNMENT'S RESPONSE TO DEFENDANT'S
MOTIONS IN LIMINE TO PRECLUDE EVIDENCE

The United States hereby submits this response to Defendant Danean Kimberly MacAndrew's Motions in Limine to preclude the Government from presenting (1) general evidence of the events of January 6; (2) social media statements made by MacAndrew after January 6, and (3) social media statements unrelated to January 6th. For the reasons stated herein, MacAndrew's motion should be denied.

**I.      General Evidence of the Events of January 6 Should Not be Excluded**

As a general matter, the Government agrees that MacAndrew is not liable for the conduct of people around her in the Capitol building on January 6, 2021.[1] But from there, MacAndrew incorrectly extrapolates that "[d]etails about the conduct of the crowd, organized groups, political leaders or individuals other than Ms. MacAndrew are not relevant to her culpability" (ECF No. 35 at 4) and that "general evidence" regarding the events of January 6 "risks judgment of Ms.

---

[1] MacAndrew could face criminal liability, of course, for any acts that she aided or abetted. 18 U.S.C. § 2. Accomplice liability is always at issue, whether or not pled in the indictment or information. *United States v. Lam Kwong-Wah*, 924 F.2d 298, 302 (D.C. Cir. 1991) ("an indictment need not specifically include an aiding and abetting charge because, whether specified or not, the federal statute creating liability for aiding and abetting . . . is considered embodied in full in every federal indictment") (internal quotations omitted).

MacAndrew on the conduct of others, rather than only on her own conduct." (ECF No. 35 at 5). This is not what the Government will argue at trial. Rather, the conduct of people who were near MacAndrew in the Capitol is relevant to explain how her conduct was disorderly and disruptive, and to prove her motive and *mens rea*.

### A. The Conduct of Other Rioters is Relevant to Proving MacAndrew's Disorderly and Disruptive Conduct

It is the Government's position that the events of January 6 were a collective action that disrupted Congress and the certification of the electoral votes. This is important because Counts Two and Three charge MacAndrew with committing disorderly and disruptive conduct. 18 U.S.C. § 1752(a)(2); 40 U.S.C. § 5104(e)(2)(D). Both crimes require proof of disorderly and disruptive conduct: with the intent to impede or disrupt Government business (Count Two) or an orderly session of Congress (Count Three). And Count Two carries the additional requirement that the conduct "*in fact*, impedes or disrupts the orderly conduct of Government business or official functions." 18 U.S.C. § 1752(a)(2) (emphasis added). Context matters in this scenario. MacAndrew argues that to prove violations in this case, the Government "needs to present evidence specific to Ms. MacAndrew's movements, knowledge, intent, and actual behavior at the Capital [sic]." (ECF No. 35, at 4). We agree. However, the Government cannot view MacAndrew's actions on January 6 as an isolated incident separate and apart from the events of the entire day, as MacAndrew suggests.

To prove that the defendant's conduct was disorderly and disruptive, and that the defendant's conduct in fact impeded or disrupted Congress, the Government will present testimony from U.S. Capitol Police (USCP) among other witnesses. USCP officers will explain that the Capitol building was closed to the public on January 6, 2021. No member of the mob was authorized to be in the Capitol, no member of the mob submitted to security checks, and the USCP

assessed every member of the mob to be an active threat. Given a variety of factors, including the size of the crowd and the existence of multiple breach points, Congress was forced to recess. Congress could not resume its business until the entire mob was cleared. MacAndrew was in the building, and USCP and Metropolitan Police Department (MPD) officers had to expel her (and others) before Congress could return from recess. In that way, MacAndrew's conduct was *in fact* disruptive. And proof of this requires evidence of the conduct of other rioters.

The Government, therefore, disagrees with MacAndrew's contention that "[i]ncidents that occurred prior to or after her arrival or in different locations of the Capital [sic] carry nearly no probative value but are extremely prejudicial" (ECF No. 35 at 4-5); and that "[p]resentation of this evidence only goes to the scope and gravity of what happened that day, but not to the [sic] Ms. MacAndrew's specific conduct. To the extent the backdrop of the events of that day relate to Ms. MacAndrew, the probative value is far outweighed by the concerns of FRE 403." (ECF No. 35 at 5). As your Honor explained in *United States v. Rivera*, another January 6 case:

> The following metaphor is helpful in expressing what the statute [18 U.S.C. §1752(a)(2)] *does* require. Just as heavy rains cause a flood in a field, each individual raindrop itself contributes to that flood. Only when all of the floodwaters subside is order restored to the field. The same idea applies in these circumstances. Many rioters collectively disrupted Congressional proceedings, and each individual rioter contributed to that disruption. Because Rivera's presence and conduct in part caused the continued interruption to Congressional proceedings, the Court concludes that Rivera in fact impeded or disrupted the orderly conduct of Government business and official functions.

*United States v. Jesus D. Rivera*, Case No. 1:21-cr-00060 (CKK), ECF No. 62 at 13. In other words, the nature of these crimes is collective action—a collective action that disrupted Congress and the certification of the electoral votes on January 6.

**B.  The Conduct of Other Rioters, Where MacAndrew Could Have Observed It (or Where She Discussed It) is Relevant to Proving Her *Mens Rea* and Motive**

The Government submits that the conduct of other rioters is relevant for another purpose. Where other rioters near MacAndrew did something that she could have observed, or where MacAndrew talked or wrote about the conduct of other rioters, their conduct is probative of her *mens rea* and motive.

It is neither novel nor controversial to see other people's behavior as probative of MacAndrew's state of mind. Indeed, in other trials arising out of the January 6, 2021 riot at the Capitol, the Government has made similar arguments about the relationship between the conduct of nearby rioters and other defendants' states of mind. *E.g.*, *Rivera*, Tr. 6/15/2022 at 198 (Closing Argument) ("Mr. Rivera was part of a huge collective of people who disrupted Congress and the staff as they worked. . . . He heard people chanting outside the building. "Whose house? Our house." He heard those same chants when he entered the building as well. He watched rioters confront law enforcement on the west front plaza and fight to fend off the mobs on the northwest stairs.").

To be sure, the defense may argue—if the evidence supports it—that MacAndrew failed to see, hear, or understand what was happening around her. But the defense should not be able to convert this argument into a legal principle which treats the events happening around MacAndrew as irrelevant. Context matters. The behavior of other rioters, together with other evidence, will establish MacAndrew's intent and motive when she joined them in breaching the Capitol and remaining inside.

## II. Social Media Statements by MacAndrew After January 6 Should Not be Excluded

MacAndrew separately moves this Court to preclude introduction into evidence of *all* social media posts she made in the aftermath of January 6, 2021, under Federal Rules of Evidence 403.

This request should be denied because MacAndrew's social media posts are relevant to her *mens rea* and do not offend FRE 403.

### A. Defendant's Words are Relevant to her Intent and Knowledge on January 6, 2021.

"The Federal Rules of Evidence generally favor the inclusion rather than the exclusion of evidence." *United States v. Thomas,* 987 F.3d 697, 706 (11th Cir. 1993). Evidence is subject to the balancing test of Federal Rule of Evidence 403, which renders it inadmissible only if the prejudicial effect of admitting the evidence "substantially outweighs" its probative value. *United States v. Miller*, 895 F.2d 1431, 1436 (D.C. Cir. 1990). Furthermore, it is not enough that the evidence is simply prejudicial; the prejudice must be "unfair." *United States v. Cassell,* 292 F.3d 788, 796 (D.C. Cir. 2002) (quoting *Dollar v. Long Mf'g, N.C., Inc.*, 561 F.2d 613, 618 (5th Cir. 1977) for the proposition that "[v]irtually all evidence is prejudicial or it isn't material. The prejudice must be "unfair."); *United States v. Pettiford*, 517 F.3d 584, 590 (D.C. Cir. 2008) ("[T]he Rule focuses on the danger of *unfair* prejudice, and gives the court discretion to exclude evidence only if that danger *substantially* outweigh[s] the evidence's probative value.") (citations and punctuation omitted) (emphasis in original). "Rule 403 establishes a high barrier to justify the exclusion of evidence." *United States v. Lieu,* 963 F.3d 122, 128 (D.C. Cir. 2020).

Without referencing specific social media posts, MacAndrew asks for a blanket order precluding the introduction of her social media posts after January 6 because introduction would be "needlessly cumulative, waste time, and cause undue delay." (ECF No. 35 at 6). MacAndrew contests that her social media posts after January 6 should be excluded because "their *only* value would be to establish that Ms. MacAndrew was at the Capital [sic] and went inside the building." *Id.* (emphasis added). While some of MacAndrew's social media posts are certainly not relevant to trial, others do show her acknowledgment of the events of January 6. The factfinder at trial may

5

deduce that MacAndrew's statements demonstrate that her conduct on January 6—entering the Capitol grounds and breaching the building—was purposeful and was motivated by her belief that the 2020 Presidential Election was fraudulent. The factfinder may also properly make the inference that MacAndrew's statements in her social media posts evinced an intent to knowingly and willfully enter and remain in a restricted building and grounds, engage in disruptive and disorderly conduct with intent to impede and disrupt the orderly conduct of government, and parade, picket, or demonstrate in a Capitol building. That MacAndrew made these statements after the events of January 6 does not detract from their relevance to the *mens rea* element of the charged offenses.

### III. The Government Does Not Contest MacAndrew's Request to Preclude Social Media Statements Unrelated to January 6

Finally, MacAndrew moves to prevent the introduction of social media content that expresses her "political opinions, religious beliefs, or opinions about COVID-19" unrelated to January 6. (ECF No. 35 at 6). The Government does not intend to introduce such evidence at trial and, thus, does not contest this request, which can be denied as moot.

### CONCLUSION

For the reasons stated above, the Court should deny MacAndrew's Motion in Limine.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:   */s/ Julie Bessler*
Julie Bessler
Assistant United States Attorney
PA Bar No. 328887
601 D Street NW
Washington, DC 20001
202-809-1747
Julie.Bessler@usdoj.gov